MURIEL R. JACOBS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jacobs v. Commissioner
Docket No. 3337-75.
United States Tax Court
T.C. Memo 1977-1; 1977 Tax Ct. Memo LEXIS 440; 36 T.C.M. (CCH) 1; T.C.M. (RIA) 770001; January 10, 1977, Filed *440 1. Petitioner failed to prove that she suffered theft losses deductible under sec. 165 in the years 1972 and 1973. 2. Petitioner offered no evidence at trial to support her allegations of error in respondent's determination of additional alimony income and disallowance of various deductions and head-of-household status; respondent's determinations on these issues affirmed. 3. Petitioner did not intend to evade tax in claiming theft losses on her 1972 and 1973 returns which she knew to be excessive; additions to tax for fraud not imposed. Muriel R. Jacobs, pro se. James L. Norris, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined deficiencies in petitioner's income taxes and additions to tax, under section 6653(b), I.R.C. 1954, [1] as follows: TYE
Addition to tax under Dec. 31
Deficiency
sec. 6653(b)
1972
$1,355.00
$677.50
1973
930.13
465.07
The issues for decision are: (1) Whether petitioner is entitled to theft losses under section 165 in the amount of $54,815 for 1972 and $66,815 for 1973; (2) Whether petitioner is entitled to *441 a charitable contribution deduction, under section 170(a), in the amount of $1,025 for 1972; (3) Whether petitioner is entitled to miscellaneous deductions in the amount of $151.85 for 1972 and $31.50 for 1973; (4) Whether petitioner received taxable income under section 71(a) from alimony payments in the amount of $195 for 1973; (5) Whether petitioner is entitled to deductions for expenses allegedly incurred with respect to property held for rental pursuant to section 212 in the amount of $204 for 1973; (6) Whether petitioner is entitled to file her tax return as head of household under sections 1(b) and 2(b) for the year 1973; and (7) Whether petitioner is liable for additions to tax under section 6653(b) for both 1972 and 1973. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation together with exhibits attached thereto are incorporated herein by this reference. At the time of filing the petition herein, Muriel R. Jacobs, petitioner, resided at 569 West 2700 South, Syracuse, Utah. Petitioner timely filed her Federal income tax return, Form 1040, for the taxable year 1972 with the director, Western Region, Internal Revenue Service Center, *442 Ogden, Utah. Petitioner mailed her 1973 income tax return to Donald C Alexander, Internal Revenue Service, Washington, D.C. However, said return was thereafter sent to and filed with the director, Western Region, Internal Revenue Service Center, Ogden, Utah. During the taxable years 1972 and 1973 petitioner was a clerk at the Internal Revenue Service Center, Ogden, Utah. In 1955, petitioner and her former husband purchased a tract of land on which was situated a home described as 5768 South 3100 West, in the City of Roy, Utah. The purchase price of this real estate was $10,500 and was allocated $2,100 to the land and $8,400 to the improvements. The dimensions of the land were 130 feet X 654 feet and the cost of the land per square foot was $.0247 ($2,100 over 85,020 square feet). On July 7, 1971, the City of Roy instituted a condemnation action in the Weber County District Court for immediate occupancy of 3,927 square feet (130.9 [2] *443 feet X 30 feet) of the above-described property owned by petitioner and her former husband. Petitioner, representing both herself and her husband, vigorously contested the legality of the taking of said property. [3] In connection with the condemnation proceedings on petitioner's property, the City of Roy hired an independent real estate appraiser who determined a fair market value for the portion of petitioner's property under condemnation in the amount of $885 as of March 18, 1970. Subsequently, the appraiser increased the determined amount to $1,000 as of July 1, 1971. During the jury trial held in connection with the condemnation action, petitioner testified that in her opinion the value of the property being condemned was approximately $2,500. On July 25, 1972, the jury determined a value of $1,000 for the land taken by condemnation. On August 11, 1972, the Second District Court in and for Weber County, State of Utah, entered judgment condemning the aforedescribed portion of petitioner's property for use by the City of Roy and awarded petitioner (and her husband) $1,000 as compensation *444 for said property, which amount was paid to petitioner and deposited in her husband's savings account. On July 2, 1973, petitioner filed a Complaint for Separate Maintenance and/or Divorce in the District Court of Davis County, Utah, in which she alleged that the approximate value of the entire parcel of Roy property was $15,000 to $20,000. In its Findings of Fact and Conclusions of Law wherein the court granted a decree of divorce to both petitioner and her husband, dated April 30, 1974, the district court found that the value of said property was approximately $15,000 to $16,000. On her 1972 tax return, which petitioner filed as a married individual filing separately, petitioner did not report any gain with respect to the condemnation proceedings and $1,000 award. [4] However, petitioner claimed a theft loss on her return as a result of the condemnation action. On schedules A and B of petitioner's 1972 Form 1040 petitioner claimed deductions for "multiple casualty theft losses" of $45,815 and $9,000. On a separate sheet attached to said return was an explanation of the alleged theft losses in which petitioner stated, with respect to the above-described condemnation, "Theft, for *445 Church Corp. Assessment, of Frontage Property 130.9 feet X 30 feet at $350.00 per Front Foot. $45,815.00." The additional theft loss of $9,000 reported by petitioner was explained as: "Theft of 3 Building Lots Roy City, a Municipal Corp. $3,000.00 ea = $9,000.00." On petitioner's 1973 tax return, which she filed claiming status as unmarried head of household, again "multiple theft losses" were claimed, this time in the amount of $66,815. Petitioner sent this return by certified mail to the Commissioner of Internal Revenue in Washington, D.C. Attached to this return was a letter to Donald C Alexander, Commissioner, in which petitioner directed attention to the claimed theft loss deduction and essentially explained that she had claimed losses for 1972 expecting to be audited and requested that this return be audited. The transactions reported on petitioner's returns for 1972 and 1973 resulted in claimed overpayments of taxes and refunds due petitioner in the amounts of $1,648.80 and $1,687.39, respectively, both representing *446 the amount of tax withheld at the source. Refunds for both 1972 and 1973 were paid by the Internal Revenue Service and accepted by petitioner. And again on petitioner's return for 1974 [5] a theft loss was claimed in the amount of $68,072.69. The transaction which allegedly gave rise to this claimed theft loss was the subject of a 1971 Summary Opinion of this Court. [6] One of the two issues in that case, both of which were decided against petitioner and her former husband, was whether or not the petitioners had incurred a capital loss under section 165 in the year 1962 as a result of certain transfers of portions of their real property located in Roy. According to the facts recited in that opinion, in 1962 at the request of the owner of the property adjoining petitioners' land to the north and the county surveyor, petitioners quit-claimed to said property owner 5 feet of land from the northern part of their property and in return received 5 feet [7] of land from the property owner of the land adjacent to them to the south. Petitioners contended therein that the inducement to convey *447 their property in those transactions was fraudulent and apparently that, as a result of said conveyances in light of the zoning restrictions which then existed with respect to allowable lot sizes, they were fraudulently deprived of the possibility of subdividing their property for sale in 3 lots. [8] In that case we noted that the petitioners had sued in a Utah district court to rescind the quit-claim deeds because of fraud or misrepresentation and in 1965 had judgment entered against them. Holding that there had been no identifiable event upon which any loss could be predicated, we found for respondent. On December 3, 1973, petitioner visited the office of the Internal Security Division of the Internal Revenue Service, Western Region, Ogden, Utah, and met with the inspector in charge of that office, Donald Deboer. The basic responsibility of the *448 Internal Security Division is to maintain a "corruption-free" Internal Revenue Service and to that end, among other things, that office investigates complaints from Internal Revenue Service employees alleging misconduct on the part of other employees. During her meeting with Deboer petitioner lodged a complaint alleging that her property, which she valued at $2,500, had been taken through an illegal conspiracy between the Church of the Latter Day Saints and the city of Roy. During a subsequent meeting on January 15, 1974, Deboer advised petitioner that he had transmitted a copy of her 1972 tax return to the district director, Internal Revenue Service, Salt Lake City, with a recommendation that it be audited because of the $45,815 theft loss reported thereon with respect to the alleged illegal condemnation in light of her earlier statements to him concerning the value of this property. In response to this disclosure petitioner indicated that she was pleased and admitted that she had intentionally claimed an excessive theft loss in the hope it would draw attention and that the Internal Revenue Service would discover and be able to prove the above-described alleged illegal conspiracy. *449 At the trial in this proceeding the only evidence offered by petitioner and all of the arguments made by her were with respect to the alleged illegality of the condemnation proceedings by which her real property was acquired. Petitioner presented no evidence with respect to the adjustments made to her 1972 and 1973 taxes by respondent which constitute issues numbered 2 through 6 herein. Petitioner did not intend to evade tax by claiming the theft losses on her 1972 and 1973 returns. OPINION In his notice of deficiency respondent made a number of adjustments to petitioner's taxable income for the years 1972 and 1973. Petitioner disputed all of said adjustments and her petition placed at issue herein 7 questions for decision. However, at trial petitioner introduced no evidence to support the claimed charitable contribution for 1972, the miscellaneous deductions claimed for 1972 and 1973, the rental expenses claimed for 1973, that she had no income from alimony payments in 1973, or that she was entitled to head-of-household filing status for 1973.[9] On reply brief petitioner attempted to present some evidence as to all of these items. However, since the evidence was not presented *450 at trial it was not given under oath and the respondent had no opportunity to cross-examine petitioner with respect to it. As a result, the evidence cannot be considered herein, Rule 143(b), Tax Court Rules of Practice and Procedure; Joseph D. Kwong,65 T.C. 959, 967 n. 11 (1976); Frank J. Evans,48 T.C. 704, 709 (1967), affd. per curiam 413 F. 2d 1047 (9th Cir. 1969); Irene Vavasour Elder Perkins,40 T.C. 330, 340 (1963), and we must sustain respondent's determinations with respect to issues 2 through 6 for petitioner's failure to meet her burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933). With respect to the "multiple theft losses" claimed by petitioner under section 165 for both 1972 and 1973, we also must find for respondent for the reason that petitioner has failed to prove that she suffered losses in those years allowable as deductions under the tax law. The petitioner twice reported a *451 loss in the amount of $45,814 resulting from what she believed to be an illegal condemnation of her real property by the city of Roy. However, aside from the question of the legality of the condemnation proceedings, it appears from the evidence that rather than suffering a loss petitioner and her husband realized a taxable gain from this transaction. Section 165(a)[10] allows a deduction for any loss sustained during the taxable year which is not compensated for by insurance or otherwise. Subsection (b) [11] *452 provides generally that the amount of the deductible loss is measured by reference to the adjusted basis of the concerned property under section 1011. In this case, petitioner's cost for the portion of the condemned property was stipulated as $.0247 per square foot or a total of $98. The city of Roy awarded petitioner a total of $1,000 as compensation for her property. Consequently, petitioner and her husband did not suffer a loss on the transaction. [12] As best we can determine from the evidence herein, the condemnation action by the city of Roy was precipitated by the city's desire to widen the street upon which petitioner's property was located. To that end, the city moved to acquire the strip of petitioner's property abutting the existing road and to the extent of 30 feet in depth. The church building of the Church of Latter Day Saints (LDS) of Roy was also located on the same street as was petitioner's home. Petitioner was of the opinion that the sole purpose for the city's condemnation action was to benefit the LDS Church and that at the time the Roy City Council adopted the *453 resolution authorizing the condemnation it was acting as an agent for said church. Petitioner thus concluded that constitutional notions of separation of church and state were violated and that the city's actions were illegal. Petitioner made this same argument in the condemnation proceedings and the court decided this issue against her. We have no authority to review the validity of the condemnation judgment. On her return for 1972 petitioner claimed an additional theft loss of $9,000 from an alleged "Theft" of "3 Building Lots" by the city of Roy. On her 1973 return she again claimed a loss of seven building lots valued at $21,000. From what we have in the record this appears to be the same issue involved in the 1971 Summary Opinion mentioned in our findings of fact. We have no evidence to support petitioner's claimed loss on theft of building lots in 1972 or 1973. The final question we must decide is whether petitioner is liable for an addition to tax in both, or either, 1972 and 1973 for fraud, pursuant to section 6653(b). Section 6653(b), in relevant part, provides: (b) Fraud.--If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on *454 a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * * The burden of proving that part of the petitioner's underpayment for the years in issue was due to fraud is on the Commissioner. Sec. 7454(a). The Commissioner must prove fraud by clear and convincing evidence. Rule 142(b), Tax Court Rules of Practice and Procedure; Archer v. Commissioner,227 F. 2d 270 (5th Cir. 1955), affg. a Memorandum Opinion of this Court; Blaine S. Fox,61 T.C. 704 (1974); Anson Beaver,55 T.C. 85, 92 (1970). The issue of fraud poses a factual question which is to be decided upon an examination of all the evidence in the record. Mensik v. Commissioner,328 F. 2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962), cert. denied 379 U.S. 827 (1964); Irolla v. United States,390 F. 2d 951, 953 (Ct. Cl. 1968); Tsuneo Otsuki,53 T.C. 96, 105-106 (1969). Respondent contends that petitioner's conduct of claiming deductions for theft losses of $54,815 in 1972 and $66,815 in 1973 while knowing that she was not entitled to any theft loss constituted fraud within the meaning of section 6653(b). As evidence of petitioner's knowledge of the falsity of her *455 claims, respondent cites petitioner's admission to the chief of security for the IRS western region that she claimed excessive losses on her 1972 return; her testimony during the State judicial condemnation proceedings that the value of the property taken was $2,500; the appraisal report and the jury's compensation award both finding the value of the property at $1,000; and the divorce complaint filed against her husband wherein the value of the entire parcel of petitioner's real estate, only a portion of which had been condemned, was estimated at $15,000 to $20,000. In addition, respondent notes petitioner's experience as an IRS employee and her supervisor's testimony that petitioner is intelligent and industrious and contends that such evidence, taken as a whole, demonstrates a calculated scheme of tax avoidance sufficient to meet his statutory burden of proof. To prove fraud, it must be shown that the taxpayer deliberately intended to evade the payment of taxes which she knew or believed she owed by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F. 2d 1002, 1004 (3rd Cir. 1968), cert. denied 393 U.S. 1020 (1969); *456 Powell v. Granquist,252 F. 2d 56, 60 (9th Cir. 1958); Mitchell v. Commissioner,118 F. 2d 308, 310 (5th Cir. 1941), revg. and remanding 40 B.T.A. 424 (1939), supp. opinion 45 B.T.A. 822 (1941); Fred N. Acker,26 T.C. 107, 112-113 (1956). While we find petitioner's conduct distressing and have no doubt that she knew she was not entitled to claim the amount of losses reported on her returns, nevertheless, from our consideration of the record as a whole, under the appropriate standards, [13] we do not believe that she made those excessive claims with the intent to defraud the Government by calculated tax evasion. On petitioner's returns for both 1972 and 1973 the alleged theft losses claimed were clearly identified.With her 1972 return petitioner attached a separate sheet on which said losses were described and the amounts thereof computed. With her 1973 return petitioner attached a letter to the Commissioner of Internal Revenue in which she directed his attention to the theft losses and essentially requested that she be audited with respect thereto. Obviously, if she were attempting to claim an excessive deduction in order to *457 escape or evade taxes, such procedure would not have been undertaken. It is clear from the evidence received that petitioner sincerely believed that she was illegally deprived of her property and, after several attempts to prevent the proposed condemnation and subsequent attempts to have it overturned, she intentionally claimed excessive theft losses in the hope that the Internal Revenue Service would examine the situation and agree with her. Her testimony at trial was to that effect and we found it credible as well as consistent with her prior conduct. She stated: "I wanted my taxes audited so that somebody who did know all the tax laws could find the right tax law that applies to this condemnation that it is an illegal condemnation." Under these circumstances, we find the essential element of fraud to be missing, i.e., the proscribed intent. "The fraud meant is actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing." Mitchell v. Commissioner,supra at 310; see also E. S. Iley,19 T.C. 631, 635 (1952); ClevelandThurston,28 T.C. 350 (1957). [14] We hold that respondent has not proved this required intent by clear and *458 convincing evidence. However, we feel it incumbent upon us to admonish petitioner and caution her as to her possible future actions. We have found herein that petitioner's reporting excessive "theft" losses on her returns was not fraudulent essentially because of our finding that she actually believed her property had been illegally taken and reported an excessive loss in order to have the Commissioner examine the circumstances of the condemnation action. However, under the Federal tax law whether or not a theft has occurred depends upon the law of the State where the loss has occurred. Edwards v. Bromberg,232 F. 2d 107 (5th Cir. 1956); Lester I. Paine,63 T.C. 736 (1975), affd. 523 F. 2d 1053 (5th Cir. 1975). Petitioner's alleged *459 loss occurred in Utah and the Utah courts have determined that the City of Roy properly exercised its right of eminent domain and in connection therewith was not acting as an agent for the LDS Church. Petitioner must recognize that this is the law and that, at this point in time, that holding will not be overturned or reviewed by any authority, State or Federal, and that she is obligated to properly report her income. At some point in time a refusal to accept determinations made by properly sanctioned authorities, specifically that petitioner's property was not illegally taken, can be objectively viewed in only one way--that no reasonable person could truly hold a contrary belief and thus that petitioner does not actually believe to the contrary but simply continues to adopt a self-serving position. Under such circumstances a finding of fraud would be justified. See Mitchell v. Commissioner,supra.Petitioner in this proceeding has come perilously close to this point. Accordingly, we sustain respondent's determined deficiencies but not the asserted additions to tax. Decision will be entered for respondent in the amount of the deficiencies in tax determined in the notice of deficiency. *460 Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.↩
2. The discrepancy of.9 feet between the purported length of the property owned by petitioner and her former husband and the length of the portion of said property condemned is explained infra↩ at p.8, fn. 7. 3. For purposes of convenience the real property owned by petitioner and her former husband will be referred to as petitioner's property.↩
4. No evidence was received as to whether petitioner's husband reported all or any portion of the gain realized from the condemnation award on his 1972 separate return.↩
5. The year 1974 is not before us but the return for 1974 was filed as an exhibit herein by respondent.↩
6. See Muriel R. Jacobs and Clarence C. Jacobs,↩ T.C. Summary Opinion 1971-22. 7. Petitioner and her husband actually received 5.9 feet from their neighbors on the south. See Muriel R. Jacobs and Clarence C. Jacobs,supra.↩
8. Apparently, this is the basis upon which petitioner herein, in her 1972 return, claimed a theft loss of 3 building lots.↩
9. Unfortunately, the main thrust of petitioner's evidence was to the effect that the city of Roy and the Mormon Church had conspired to take her property without her consent, which has little or no relevance to the issues before us.↩
10. SEC. 165. LOSSES. (a) General Rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. ↩
11. (b) Amount of Deduction.--For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011↩ for determining the loss from the sale or other disposition of property. 12. As was indicated in our findings of fact, the property taken by the city of Roy was owned by both petitioner and her husband and they received the compensation awarded therefor. We have no knowledge whether petitioner's husband reported a gain on the transaction on his return, and we have no issue before us whether petitioner should have reported a gain.↩
13. See LorenGajewski,↩ 67 T.C. (Nov. 10, 1976), at fn. 24.
14. In the recent case of United States v. Pomponio,U.S. (Oct. 12, 1976), the Supreme Court defined "willfully" as used in sec. 7206(1) making the willful filing of false income tax returns a felony, as a "voluntary, intentional violation of a known legal duty" not requiring proof of an evil motive. It is uncertain whether this definition also applies to the word "fraud" as used in sec. 6653(b)↩, but, if so, it would not affect our conclusion on this issue.