**Chris D. STOLTZFUS and Irma H. Stoltzfus**

v.

**UNITED STATES.**

**Civ. A. No. 34343.**

United States District Court
E. D. Pennsylvania.

March 7, 1967.

Converse Murdoch, Berl, Potter & Anderson, Wilmington, Del., for plaintiffs.

Mitchell Rogovin, Asst. Atty. Gen., A. C. Murphy, U. S. Dept. of Justice, Washington, D. C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER

JOSEPH S. LORD, III, District Judge.

██ Plaintiff (hereinafter "taxpayer" [1]) sues for the refund of civil fraud

---

1. "Taxpayer" refers to Chris Stoltzfus. There is no suggestion in the record that Mrs. Stoltzfus was liable for or that she paid any part of the deficiency assessments. She appears in this case only because joint returns were eventually filed. She alone cannot, of course, recover if her husband acted fraudulently.

penalties imposed for the taxable year 1954 pursuant, to Section 6653(b) of the Internal Revenue Code.[2] The case was tried by my late brother Judge Grim (sitting as finder of fact) who died before handing down a decision. After his death, the matter was assigned to me, and the parties have stipulated that I may draw the necessary findings of fact and conclusions of law from the present record, without prejudice to the later assertion by either party of post-trial motions.

■ The parties have also agreed that the burden of proof, specifically the burden of proving fraud, is on the government. See Cirillo v. C. I. R., 314 F.2d 478, 482 (C.A.3, 1963). I have determined that the government has sustained this burden by "clear and convincing" evidence, id., and that judgment must be entered for the defendant. In making these findings, I have construed all of the evidence most favorably to the plaintiff. This approach seemed peculiarly well-suited to the adjudication of this case because, although I presided at the criminal trial of Mr. Stoltzfus for willful failure to file tax returns, 26 U.S.C. § 7203; Crim.No. 20938 (E.D.Pa.1962), I have had no fresh opportunity to assess his demeanor credibility or that of any other witness who testified in the present proceedings.

## FINDINGS OF FACT

Taxpayer freely concedes that he filed no tax return in 1954. Indeed, he does not dispute the fact that he filed no tax returns for the years 1943 to 1958, although he knew all along that he had an obligation to do so.[3] The record also compels the conclusion that Stoltzfus knew that he was earning taxable income on which taxes should in fact be paid as required by law. Since he was a self-employed entrepreneur, no taxes were ever withheld from his earnings; the taxpayer knew from his own experience in filing returns before his lapses beginning in 1943 that the only way the government got any income tax money from him was when he filed a return and paid the indicated tax. In other words, he knew that his failure to file returns redounded to his personal gain while it deprived the government of tax funds lawfully owing to it.

The taxpayer attempts to justify his conduct by explaining that in 1943, his place of business burned down and, burdened with the ensuing loss, he knowingly refrained from submitting the second installment of his estimated tax. After that, he became obsessed with the fear of summary criminal prosecution for his omission. Thus, instead of seeking advice from an attorney, or indeed, from the Internal Revenue Service itself, he simply stopped filing returns, believing that the government would be impeded from the immediate discovery of what he himself supposed to be criminal tax fraud. The taxpayer contends that this evidence establishes that his purpose was not to avoid the payment of taxes, but merely to avoid contemplated criminal penalties for neglecting to pay.

In support of his position, Stoltzfus maintains that he made no attempt to conceal sources of income, and although there is some conflict in the testimony, I will assume that the records kept by the taxpayer, while by no means equivalent to formal "books" which readily established net income, were by and large adequate enough to establish that he did not intentionally falsify financial statements or destroy relevant portions thereof. Finally, although there is again evidence to the contrary,[4] I will assume that after

2. *"Fraud.*—If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * * *"

3. I note, and properly so (see Cirillo v. C. I. R., supra, at 482), that the taxpayer

has been convicted of willful failure to file returns.

4. Agent Richman stated that Stoltzfus claimed never to have had more than $1,000 on hand at any time. The facts are otherwise.

he had been cornered by the Revenue agents, the taxpayer cooperated reasonably well.

## DISCUSSION AND CONCLUSIONS OF LAW

 As one leading commentator has noted: "It is not easy to generalize about what constitutes fraud so as to justify the 50 per cent penalty imposed by § 6653(b)." Bittker, Federal Income, Estate and Gift Taxation (3d ed. 1964) p. 958. In this Circuit, the general rule in non-filing cases is that the ultimate burden of proof is on the government to show by "clear and convincing" evidence that "the circumstances surrounding the failure to file returns * * * strongly and unequivocally indicate an intention to avoid the payment of taxes. Powell v. Granquist, 9th Cir., 1958, 252 F.2d 56; cf. Bender v. Commissioner [of Internal Revenue], 7th Cir., 1958, 256 F.2d 771." Cirillo v. C. I. R., supra, 314 F.2d at p. 482. While willful failure to file is relevant evidence of fraudulent evasion, the burden of proving fraud is not met solely by proof of such failure. "The record must contain some convincing affirmative indication of the required specific intent." Id.

 However, I cannot agree that there should be engrafted upon civil fraud proceedings the criminal fraud requirement of "affirmative action" consisting of actively deceptive conduct by the taxpayer. See Spies v. United States, 317 U.S. 492, 498–499, 63 S.Ct. 364, 87 L.Ed. 418 (1943), a criminal case, and First Trust & Savings Bank of Davenport, Iowa v. United States, 206 F.2d 97, 100 (C.A.8, 1953), a civil case, and compare the civil case of Powell v. Granquist, 252 F.2d 56 (C.A.9, 1958). While this Circuit does not appear to have ruled definitively on the question, I think it would not follow the 8th Circuit. The Tax Court in Cirillo, T.C.Memo. 1961–192 explicitly rejected the contention that the Spies interpretation of § 7201, a strictly construed criminal statute,[5] affects civil

cases, which are governed by the vague reference to "fraud" in § 6653(b). The Tax Court referred to the specific "terminology of attempt" embodied in the criminal statute, a factor which was the fulcrum of the Supreme Court's decision in Spies. It held that no "affirmative action" or "willful commission in addition to the willful omissions" (Spies v. United States, supra, 317 U.S. at 499, 63 S.Ct. at 368) need be shown in civil suits. This reasoning appears to me to be sound.

Furthermore, when Cirillo came before the Court of Appeals, neither party cited Spies. However, we must assume that Judge Hastie, who wrote the opinion for the Court, considered the Tax Court's memorandum. Nevertheless, although both Spies and Cirillo were non-filing cases, and although there was no evidence of "affirmative action" in Cirillo, Judge Hastie did not deem it appropriate to refer to Spies. The test then, under Cirillo, is "affirmative indication," and not "affirmative action."

As applied to the facts of this case, there is no question that Cirillo requires a judgment for the government. Indeed, the taxpayer in Cirillo had a much more appealing excuse for nonpayment than Stoltzfus: the bulk of his income for many years was subject to withholding taxes and he asserted that although he knew he should have filed returns, he honestly did not believe any additional taxes were owing. In those years where this belief failed to conform to the fact of liability, the Court of Appeals, on a record no more persuasive to the government's case than that before me, had no difficulty in sustaining the Tax Court's finding of fraud, even absent the slightest indication that the taxpayer had actively concealed sources of income or falsely fabricated contemplated deductions. Referring to Cirillo's avowedly innocent attitude toward the extent of his tax liability, the Court concluded:

"* * * His disingenuous avoidance of accurate knowledge when the need for such knowledge must have been ap-

---

5. "Any person who willfully attempts * * *" to evade taxes.

parent was in itself a substantial indication of fraudulent intent. * * * " 314 F.2d at p. 483.

Stoltzfus, like Cirillo, knew of his duty to file returns and of his general obligation to pay taxes. Unlike Cirillo, he concededly realized that he had a tax liability which was neither speculative nor insubstantial. Under the circumstances, his belief that by becoming as inconspicuous as possible he could escape governmental detection cannot be interposed as a defense. Indeed, it serves to augment the proof of evil motive which the taxpayer protests is lacking. The intentional avoidance of taxes to conceal conduct which the taxpayer believed to be criminal by no stretch of the imagination reflects an innocent purpose. If Stoltzfus' arguments were to prevail, a hunted fugitive from justice could safely refuse to pay his taxes on the ground that the government would then be able to capture him by tracing his returns.

■ The non-filing taxpayer who knows of his *concrete* liability to pay taxes (and not merely his obligation to file returns or his general duty to pay such taxes as those returns might indicate are owing) intentionally, willfully, and fraudulently evades taxes, within the meaning of Section 6653(b), in the absence of a valid justification for his conduct. In this case, the justification suggested—fear of criminal reprisals—must be rejected as a matter of law for it is not even colorably valid. The taxpayer would have this court believe that because the ultimate "purpose" of the tax evasion was not to materially benefit him, but to preclude his conviction on self-conceived criminal charges, the specific intent to

defraud is absent. There are two reasons why this contention lacks merit.

■■ First, the statutory reference to fraud does not require a motive of self-enrichment.[6] It requires only a purpose to evade taxes. One who in knowing violation of the law makes no attempt to pay admitted tax liabilities and asserts no colorably valid excuse can fairly be said to have no other purpose than that of evasion.

■ Secondly, acceptance in any manner of the taxpayer's avowed primary "purpose" in failing to file or pay, avoidance of criminal prosecution for tax evasion, would thwart the operation of the revenue laws, which depend in large measure upon voluntary compliance. A taxpayer is expected to police his own records, to report promptly and in full his taxable income, and to pay the assessments which he himself has initially determined to be owing. Stoltzfus cannot justify his tax evasion by claiming that to have paid would have invited criminal prosecution for the very acts of willful defiance in which he was engaged. Such an interpretation would vitiate the deterrent effectiveness of all sanctions for tax evasion by making concealment of that evasion a justification for the evasion itself, exonerating the taxpayer from civil and criminal penalties.

■ I am satisfied that "the circumstances surrounding the failure to file returns * * * strongly and unequivocally indicate an intention to avoid the payment of taxes." Cirillo v. C. I. R., supra, 314 F.2d at p. 482.

Judgment will be entered for the defendant. It is so ordered.

6. If such were the case, a modern day Robin Hood who gave his intended tax monies to poorer countries he thought could better employ them could not be considered liable for tax evasion. See Powell v. Granquist, 252 F.2d 56 (C.A. 9, 1958), where the taxpayer's sole justification for failing to file returns and pay taxes was his objection to "the way the government was wasting money." The court dismissed this frivolous contention with the observation that "for a taxpayer to be knowingly and willfully defiant, withholding and dedicated to a plan of nonpayment of taxes for which he knows he is liable * * * " constitutes fraud. 252 F.2d at p. 60.