George Arconti v. Commissioner.
Arconti v. Commissioner
Docket No. 685-68.
United States Tax Court
T.C. Memo 1970-215; 1970 Tax Ct. Memo LEXIS 142; 29 T.C.M. (CCH) 945; T.C.M. (RIA) 70215; July 28, 1970, Filed *142 Held: That the evidence is not clear and convincing that any part of any of the deficiencies here involved is due to fraud and additions to tax under sec. 6653(b), I.R.C. 1954, are not to be applied. J. William Martin. Sylvan H. Sack, 2404 St. Paul, Baltimore, Md., and Marvin Joseph Garbis, 1731 Munsey Bldg., Baltimore, Md., for the petitioner. Charles F. T. Carroll for the respondent. QUEALY
Memorandum Findings of Fact and Opinion QUEALY, Judge: Respondent determined deficiencies in petitioner's income tax and additions thereto under section 6653(b)[1] as follows: Year
Deficiencies
Additions to theTax Sec. 6653(b)
1961
$16,797.70
$8,398.85
1962
$17,429.67
$8,714.84
1963
$14,007.46
$7,003.73
*143 The only issue presented for decision is whether the petitioner is liable for the additions to tax for fraud under section 6653 (b) for any of the taxable years 1961, 1962 and 1963. All other issues appearing in the notice of deficiency have been previously settled and the resulting tax was assessed and paid prior to the issuance of the notice of deficiency. Findings of Fact The petitioner, George Arconti, is an individual who, at the time of the filing of the petition herein, resided in Lutherville, Maryland. During the years 1961, 1962 and 1963, petitioner was an officer and employee of several corporations, namely, Bart Arconti & Sons, Inc., The G and L Construction Co., and Atlas Tile and Terrazzo, Inc. These corporations, of which petitioner was one of two principal officers, had annual sales of approximately $2 million during the years in question. As an officer of The G and L Construction Co., petitioner executed corporate income tax returns on behalf of the corporations. The income tax returns of the three above-named corporations, covering the years *144 in issue (1961-1963), were audited by the internal revenue service. They were found 946 to be accurate, subject only to technical adjustments on fully disclosed items, i.e., the treatment of a widow payment, the amount of reasonable compensation for officers, and a question of automobile expenses. No suggestion of fraud or concealment was found or is alleged by the respondent in connection with the corporate returns. During the years at issue, petitioner received remuneration for his services to the above-named corporations in the following amounts: 1961
Salary
Tax Withheld andPaid Over
Bart Arconti & Sons, Inc
$42,633.29
$7,673.99
The G & L Construction Co
8,833.30
1,434.00
(Excess F.I.C.A.)
144.00
Total
$51,466.59
$9,251.99
1962
Bart Arconti & Sons, Inc
$28,500.00
$5,130.00
The G & L Construction Co
22,466.70
3,887.10
Atlas Tile & Terrazzo, Inc
1,500.00
270.00
(Excess F.I.C.A.)
196.88
Total
$52,466.70
$9,483.98
1963
Bart Arconti & Sons, Inc
$34,000.00
$6,120.00
The G & L Construction Co
10,399.92
1,872.00
Atlas Tile & Terrazzo, Inc
1,500.00
270.00
(Excess F.I.C.A.)
228.39
Total
$45,899.92
$8,490.39
*145 Petitioner also received additional income in small amounts from interest dividends and interest in the years 1962 and 1963, and as directors' fees of a construction work trust fund in each of the years at issue. For the years 1961, 1962 and 1963, each one of the above-named corporations properly prepared and submitted to the internal revenue service (and to petitioner) W-2 forms disclosing the amount of petitioner's salary. Petitioner was fully aware of the submission of the W-2 forms. He did not make any attempt to prevent the corporations from filing timely and correct W-2 forms. He also did not make any attempt to prevent withholding by these corporations. During the years in question, the following amounts of petitioner's salary were withheld: Amounts
Finally Determined
Year
Withheld
Tax Liability
1961
$ 9,251.99
$16,797.70
1962
9,483.98
17,429.67
1963 8,490.39
14,007.46
Total
$27,226.36
$48,234.83
Petitioner failed to file timely income tax returns for the years 1961, 1962 and 1963. The petitioner subsequently filed delinquent returns for these years on April 16, 1965. Subject only to minor technical adjustments, these returns were *146 accepted as filed as follows: Year
Tax Per Return
Tax AfterAdjustment
1961
$16,375.31
$16,7 97.70
1962
$17,097.38
$17,429.67
1963
$13,121.78
$14,007.46
In two earlier years, petitioner had filed delinquent Federal income tax returns. He filed his 1957 return on May 7, 1959 (13 months late) and his 1959 return on February 27, 1961 (10 months late). On each occasion, he was assessed and paid the late filing fee. Petitioner's Maryland State income tax returns for the years in question were also filed late, at about the same time the petitioner filed his delinquent Federal income tax returns. Each of the State returns disclosed an overpayment of income taxes by virtue of withholding thus entitling petitioner to a refund. The refund was received for one of the years. On two of them, the refunds were not granted by the State of Maryland because the returns were filed after the expiration of the period allowed for the filing of refund claims. The petitioner's failure to file timely Federal income tax returns for the years 1961, 1962 and 1963 first became known to the internal revenue service in May of 1964 during the course of an audit of the returns *147 of the corporations which employed the petitioner. The years involved in the 947 audit were 1959, 1961 and 1962. This audit was conducted by internal revenue agent James Foot (hereinafter the "agent") at the office of Paul Wooden (hereinafter "Wooden"), a certified public accountant who represented the corporations. At this time, petitioner's 1963 tax return, due April 15, 1964, was only a few weeks overdue. During the course of this audit, the agent asked Wooden to obtain for him copies of the returns of the principal officers of the corporations, and among them the returns of the petitioner for the years 1962 and 1963. The agent's request for these returns, together with his request for other documents, was presented by Richard Williams (hereinafter "Williams"), an accountant on the staff of Paul Wooden, to Bart Arconti, Jr. with a request that the marterial be collected to be picked up when ready. In response to this request, petitioner prepared his 1962 and 1963 tax returns because he had not previously done so. He then gave them to Williams for transmission to Wooden to give to the agent. He did not prepare his 1961 return at this time because he believed that he had filed *148 a return for that year. Wooden received these returns from Williams and gave them to the agent in response to his request for copies of the returns for those years. The petitioner did not inform Wooden or the agent that he had not filed returns for the years 1961, 1962 and 1963. The petitioner also did not represent to anyone that he had in fact submitted his returns for 1961, 1962 and 1963 or that the documents he submitted were copies of the returns for those years. Thereafter, the agent requested the original returns through regular internal revenue service procedures and subsequently determined that no returns had been filed. On June 26, 1964 the agent had a conference with the petitioner at the local internal revenue service office. During the course of the conference, petitioner admitted he had not filed his returns for 1962 and 1963. Petitioner also expressed his uncertainty as to whether or not he had filed his 1961 return. At no time during the conference did he deny his failure to file his returns for 1962 and 1963. At the conference, petitioner showed the agent copies of his 1962 and 1963 returns and requested information as to what he should do with them. Petitioner *149 also had a check with him in the amount of the additional tax due as shown on the returns. The agent told petitioner to take the tax returns and the check and deposit them with the cashier's office. The petitioner did not file his returns for 1961, 1962 or 1963 at that time. After the conference on June 26, 1964, the petitioner's failure to file returns was the subject of a criminal investigation. Petitioner cooperated with the investigating agents, giving them all the information they requested. On March 1, 1965 petitioner voluntarily went to the office of the intelligence division of the internal revenue service in Baltimore, Maryland, for a formal interview concerning his case. At that interview, petitioner was advised by revenue agent William E. Owens, the group supervisor, that payment of the tax due could affect the issue of willfulness in a subsequent criminal proceeding. Within 6 weeks after the interview, petitioner filed his returns for 1961, 1962 and 1963 and paid the taxes in the amounts shown due on those returns. During a period beginning prior to the June 26, 1964 conference and ending with a March 1, 1965 interview with the intelligence division of the internal *150 revenue service, the petitioner believed that he was already being considered for criminal prosecution for his failure to file returns. Subsequently, the petitioner was indicted under section 7203 for his failure to file his Federal income tax returns for 1961, 1962 and 1963. Petitioner pleaded guilty to having willfully failed to file his 1962 income tax return. At the same time, the charges were dropped with respect to the years 1961 and 1963. No part of any underpayment of tax by the petitioner for the taxable years 1961, 1962 and 1963 was due to fraud within the meaning of section 6653(b). Opinion The only issue for decision is whether there was fraud within the meaning of section 6653(b)[2] for any of the taxable years 1961, 1962 and 1963. 948
The burden of proving fraud under section 6653(b) *151 is placed upon the respondent by section 7454. [3] Fraud is never presumed but must be shown by clear and convincing evidence. Archer v. Commissioner, 227 F. 2d 270 (C.A. 5, 1955), affirming a Memorandum Opinion of this Court; Bryan v. Commissioner, 209 F. 2d 822 (C.A. 5, 1954), affirming a Memorandum Opinion of this Court; and Frank Imburgia, 22 T.C. 1002 (1954). The addition to tax for fraud under section 6653(b) may be imposed when there has been a willful attempt to evade taxes by means of a willful failure to file returns, as well as by means of intentionally filing false returns, and such willful attempt to evade taxes may be found from any conduct calculated to conceal or mislead. Stoltzfus v. United States, 398 F. 2d 1002 (C.A. 3, 1968), affirming 264 F. Supp. 824 (E.C. Pa. 1967); Cirillo v. Commissioner, 314 F. 2d 478 *152 (C.A. 3, 1963), affirming on this issue a Memorandum Opinion of this Court; Powell v. Granquist, 252 F. 2d 56 (C.A. 9, 1958); Charles F. Bennett, 30 T.C. 114 (1958); and Fred N. Acker, 26 T.C. 107 (1956). A willful failure to file does not in and of itself, and without more, establish liability for a fraud penalty. Cirillo v. Commissioner, supra; Jones v. Commissioner, 259 F. 2d 300 (C.A. 5, 1958). However, such failure may be considered in connection with all other facts in deciding whether any underpayment of tax is due to fraud. Stoltzfus v. United States, supra; and Cirillo v. Commissioner, supra. Upon consideration of the record as a whole, and from a careful study of petitioner's testimony at the trial, we conclude that the government has not shown clear and convincing evidence of fraud. Petitioner was one of two principal officers of the three corporations from which he received almost the entire amount of his income for the years 1961, 1962 and 1963. No suggestion of concealment or fraud with respect to the income of the corporation or the amounts going to the petitioner was *153 found or alleged in connection with the corporate returns. Despite his position of importance and control within the corporations, petitioner did not attempt to prevent the corporations from filing timely and correct W-2 forms, which reported all of the income petitioner received from the various corporations during the years in question. The petitioner also caused the corporations to withhold the full amount of his compensation, and in each of the years in question, the withholding amounted to over 50 percent of his total tax liability. These acts are inconsistent with a fraudulent intent. As to the taxable year 1961, we have found that petitioner believed that he had filed a return for that year. This finding is reinforced by petitioner's conduct at the June 26, 1964 conference with the agent. At that meeting, in an obvious attempt to mitigate his failure to file, the petitioner had with him copies of his 1962 and 1963 returns and a check for the amount of the additional tax due as shown on the returns. However, he did not bring his 1961 return or any funds with which to pay his tax liability for that year. Unless petitioner believed that he had filed a return for that year, such *154 action was inconsistent with his intent to lessen the impact of his failure to file timely returns for the years in question by filing those returns and paying the tax due at the conference, especially in a situation where full disclosure would have been in his best interest. With respect to the taxable years 1962 and 1963, respondent argues that the petitioner's conduct in response to the agent's request for copies of his returns for those years - specifically that he had his returns delivered to the agent without informing him that he had not filed returns for those years - was a misrepresentation which indicated the petitioner's fraudulent intent. We do not agree with this argument. We have found that petitioner prepared his 1962 and 1963 income tax returns in response to the agent's request for those returns. This request was transmitted to the petitioner through Wooden and Williams and not by the agent directly to the 949 petitioner. After completing the returns, petitioner submitted them to those same intermediaries to give to the agent. While petitioner did not inform anyone that he had failed to file returns for those years, he also did not represent to anyone that *155 he had filed them. In these circumstances, where both the request for and transmission of the returns took place through intermediaries and where petitioner made no direct representations, petitioner's action cannot properly be considered a misrepresentation indicating fraudulent intent. Respondent also contends that the fact that petitioner failed to file his returns and pay the taxes owed for the years in question after a series of contacts with the internal revenue service was indicative of his fraudulent intent. We find respondent's contention without merit. During a period beginning with the June 26, 1964 conference with the agent and ending with the March 1, 1965 interview with the intelligence division, the petitioner believed that he was already being considered for criminal prosecution. When he learned that his failure to file returns could affect the issue of willfulness, he filed his returns. During this period, petitioner knew that his failure to file returns for 1961, 1962 and 1963 had been discovered. He also cooperated with internal revenue service employees, giving them all the information they requested. In these circumstances, it is clear that petitioner believed *156 that once his failure to file returns was known to the internal revenue service, the subsequent filing or nonfiling of his returns would not affect the decision of the service to prosecute or the outcome of his case. Any other reason would have been inconsistent with his best interest and his cooperation with the service. Therefore, we do not find a fraudulent intent in the petitioner's failure to file in the course of his dealings with the internal revenue service. Furthermore, petitioner filed his 1957 and 1959 returns 13 months and 10 months late, respectively, and paid the penalty for such late filing in each of those years. There is no evidence in the record nor does respondent contend that these late filings and penalty payments were not entirely voluntary. In the case before us, at the time petitioner's failure to file for 1962 and 1963 was discovered in May of 1964, the 1962 return was almost 13 months late, and the 1963 return was only a few weeks late. Thus, petitioner's failure to file timely 1962 and 1963 returns was consistent with his past tardiness in filing returns, and the circumstances of the case do not indicate that he would not have filed his returns for those *157 years. Finally, petitioner also failed to file his Maryland income tax returns for the years in question. In each of the years 1961, 1962 and 1963 he would have received a refund of his Maryland taxes. This indicates that petitioner was generally very careless with respect to his obligations to file returns and pay taxes and that his failure to file returns was due to such carelessness rather than an attempt to defraud. While the facts indicate gross negligence on the part of the petitioner, it is our conclusion that the evidence is insufficient to indicate the necessary fraudulent intent. Therefore, taking all of the circumstances of the case into consideration, we hold that the respondent has failed to prove fraud by clear and convincing evidence. Decision will be entered for the petitioner. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. SEC. 6653. FAILURE TO PAY TAX. (b) Fraud. - If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a).↩
3. SEC. 7454. BURDEN OF PROOF IN FRAUD, FOUNDATION MANAGER, AND TRANSFEREE CASES. (a) Fraud. - In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Secretary or his delegate.↩