ANTHONY RUSSO AND ROSE RUSSO, ET AL, [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Russo v. Commissioner
Docket Nos. 5190-72, 5216-72, 5222-72.
United States Tax Court
T.C. Memo 1975-268; 1975 Tax Ct. Memo LEXIS 106; 34 T.C.M. (CCH) 1151; T.C.M. (RIA) 750268; August 19, 1975, Filed Herbert L. Zuckerman, for the petitioners. Robert N. Ginsburg, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax and additions to tax as follows: [SEE TABLE IN ORIGINAL]
The cases were consolidated for trial, briefs and opinion. Due to concessions, the sole issues remaining for decision are whether Anthony Russo's omissions from income for each of the years 1965 through 1969 [2] and the failure of Anthony Russo, Inc., to file corporate income tax returns for each of the years 1965 through 1969 were fraudulent with the intent to defeat their respective tax liabilities subjecting either or both of them to the 50 percent fraud penalty provided by section 6653(b), [3] *107 Internal Revenue Code of 1954. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioner Anthony Russo resides in West Long Branch, New Jersey. At the time of filing the petition herein, his address was in care of the warden at Trenton State Prison, Trenton, New Jersey. At the time of filing the petition herein, Rose Russo resided in Union, New Jersey. Petitioner Anthony Russo, Inc. is a New Jersey corporation organized under the New Jersey Business Corporation Act on October 2, 1964, with its principal place of business in West Long Branch, New Jersey. During the taxable years 1964, 1965 and 1966, petitioners Anthony and Rose Russo were husband *108 and wife, and they filed joint Federal income tax returns with the District Director of Internal Revenue, Newark, New Jersey. Anthony Russo divorced Rose Russo on June 9, 1967, but filed a joint income tax return with Rose Russo for the year 1967. Anthony Russo was not entitled to file a joint return with Rose nor to claim an exemption for his former spouse for the year 1967. Anthony Russo filed individual income tax returns for the taxable years 1968 and 1969. Petitioner Anthony Russo, Inc. did not file income tax returns for the taxable years 1965, 1966, 1967, 1968 and 1969. On September 17, 1971, Anthony Russo was indicted for failure to file corporate income tax returns for Donato-Russo Enterprises, Inc. for taxable years ended August 31, 1965, 1966, 1967 and 1968 and for failure to file corporate income tax returns for Anthony Russo, Inc. for taxable years 1965, 1966 and 1967. On October 28, 1971, Anthony Russo pleaded guilty to willful failure to file corporate income tax returns for Donato-Russo Enterprises, Inc. for the taxable years ended August 31, 1967, and August 31, 1968, and to willful failure to file corporate income tax returns for Anthony Russo, Inc. for the taxable *109 years 1965, 1966 and 1967. Anthony Russo controlled Anthony Russo, Inc. and Donato-Russo Enterprises, Inc. The following statement reflects the items of income reported by Petitioners Anthony and Rose Russo on their Federal income tax returns for the taxable years 1965 through 1969, inclusive, and the items of income they omitted from such returns which constituted taxable income to them: [SEE TABLE IN ORIGINAL]
Anthony Russo overstated his salary income from Donato-Russo Enterprises, Inc. for the taxable year 1965 by $2,686. On petitioners' income tax return for the taxable year 1965, Anthony Russo did not understate by $1,400 the salary he received from Skippers, Inc. Petitioners sustained a short-term capital loss in the amount of $2,650 and a long-term capital loss in the amount of $3,020 as shown on their income tax return for the taxable year 1966. Petitioners suffered a business loss of $8,486.15 in the taxable year 1966 incident to operation of a racing stable. In 1967, Anthony Russo received $15,600 in management fees from Donato-Russo Enterprises, Inc. Petitioner reported only $10,600 resulting in a $5,000 omission from income for the taxable year. On or about *110 June 12, 1968, Donato Construction Co. transferred to Anthony Russo real estate (valued at $84,810) located in Eatontown, New Jersey, free and clear of encumbrances. On or about May 3, 1968, Anthony Russo sold his interest in Skippers, Inc. realizing a long-term capital gain of $14,500 which was not reported on his income tax return for the taxable year 1968. For the taxable year 1968, Anthony Russo reported a loss on a nonbusiness bad debt limited to $1,000. Petitioner Anthony Russo, Inc. earned gross income, sustained deductible expenses and realized net taxable income as follows: [SEE TABLE IN ORIGINAL] Anthony Russo is illiterate. He reads at a first grade level, spells at a second grade level and scored at about the second grade level in arithmetic. During the years in issue, Anthony Russo was in poor health and spent approximately one-third to one-half of his time in Florida. Anthony Russo relied on two of his associates to carry on the day-to-day business of Anthony Russo, Inc. and Donato-Russo Enterprises, Inc. Anthony Russo was shrewd in dealing with business transactions, but he was unsophisticated in the day-to-day operation of business. In 1964, petitioners *111 employed capable accountants to set up books and records, to ensure such books were properly maintained, and to file all necessary tax returns. Great reliance was placed on the accountants. From late 1964 through 1966, the accountant was authorized to sign checks because of the unavailability of corporate officers to function as comptroller for Anthony Russo, Inc. and Donato-Russo Enterprises, Inc. Initially, the accountants made monthly visits to petitioner's place of business to ensure proper record keeping and received substantial fees for their services. Nevertheless, petitioner's bookkeepers were inadequately trained to account for the multiple intercorporate transactions involved in the routine operation of the corporations controlled by Anthony Russo. In rendering services, the accountants relied exclusively on information supplied by Anthony Russo or his secretary-bookkeeper. One accountant withdrew from the employment in 1966 because he could not get sufficient information to file proper returns for petitioners. The $300 weekly checks for management fees paid Anthony Russo by Donato-Russo Enterprises, Inc. in 1966 and 1967 were recorded in a corporate account labeled Anthony *112 Russo rather than wages. In July 1967, Russo informed his accountant that he owned obligations of Raff Holding Co. but did not inform him of the source of such asset. Russo failed to inform the accountant preparing his 1968 return of the receipt of real estate and wages from Donato Construction Co. during the year. From 1964 through 1966, the accountant was not overly concerned about the failure of Anthony Russo, Inc. to file returns because, based on the data submitted by Anthony Russo, the corporation was operating at a loss; however, the accountant repeatedly advised Anthony Russo that the corporation must file returns and that he was unable to obtain the basic information to prepare them. ULTIMATE FINDINGS OF FACT 1. Petitioner Anthony Russo knew that salary income was taxable income, but failed to report salary income earned by him in the amounts of $11,700; $5,297; and $3,900 in the taxable years 1966, 1967 and 1968, respectively. 2. For each of the years 1965 through 1969, Anthony Russo knowingly, willfully and with fraudulent intent to defeat his tax liabilities, omitted income from his Federal income tax returns. 3. As controlling shareholder of Anthony Russo, Inc. *113 , Petitioner Anthony Russo failed to file Federal corporate income tax returns for the years 1965 through 1969 without an intent to defeat the corporation's tax liability. OPINION The issues for decision are whether Anthony Russo's omissions from income for each of the taxable years 1965 through 1969 and the failure of Anthony Russo, Inc. to file Federal corporate income tax returns for each of the taxable years 1965 through 1969 were fraudulent with the intent to defeat their respective tax liabilities, thus subjecting either or both petitioners to the 50 percent fraud penalty of section 6653(b). The issue of fraud is one of fact to be determined upon a consideration of the entire record. William G. Stratton,54 T.C. 255 (1970). The burden of proving fraud under section 6653(b) is placed upon the respondent by section 7454. Fraud is never presumed. It must be affirmatively established by clear and convincing evidence. Anson Beaver,55 T.C. 85 (1970); Rule 142, Tax Court Rules of Practice and Procedure.Direct evidence of fraudulent intent is seldom available and whether it exists must be determined from the conduct of the taxpayer and the surrounding *114 circumstances. It is apparent from the record that petitioner Anthony Russo failed to report substantial amounts of income for each of the taxable years 1965 through 1969. The mere understatement of income, standing alone, is not sufficient to support a finding of fraud. However, the consistent failure to report substantial amounts of income over a number of years is strong evidence of fraudulent intent. Merritt v. Commissioner,301 F.2d 484 (5th Cir. 1962); Schwarzkopf v. Commissioner,246 F.2d 731 (3d Cir. 1957). In Epstein v. United States,246 F.2d 563 (6th Cir. 1957), cert. denied 355 U.S. 868 (1957), the court stated at page 566: The consistent understatement of large amounts of income for a number of years is evidence of willful intent to evade. Kurnick v. Commissioner, supra, 232 F.2d 681; Drieborg v. Commissioner of Internal Revenue, 6 Cir., 225 F.2d 216. In Holland v. United States, supra, 348 U.S. 139, 75 S.Ct. 137, the Supreme Court declared that "evidence of a consistent pattern of underreporting large amounts of income" will support "an inference of willfulness. *115 " Based upon the entire record in this case, we conclude that the omissions from income on Anthony Russo's income tax returns for the taxable years 1965 through 1969 were fraudulent. The recurring understatements of substantial amounts of income, coupled with a showing that petitioner withheld information from his accountants necessary to properly prepare his income tax returns, are sufficient to warrant a finding of fraud. Petitioner contends that his illiteracy precludes a finding of fraud. Though ignorance has been used in some cases as an indicia of lack of fraudulent intent, it does not appear that petitioner's ignorance was a factor in his failure to report large amounts of income. The record reveals that his accountants characterized him as a shrewd businessman and that his alleged shortcomings did not prevent him from realizing large amounts of income in each year in question. Moreover, his returns indicate he knew that the unreported salaries received constituted taxable income. Petitioner also asserts that he relied upon his accountants to prepare accurate returns and run the business. It is true that a taxpayer's reliance on an accountant to prepare his income tax returns *116 may indicate an absence of fraudulent intent. John Marinzulich,31 T.C. 487 (1958). However, reliance on others to prepare one's income tax returns is not an acceptable defense to an allegation of fraud if the taxpayer has failed to supply all necessary information. Foster v. Commissioner,391 F.2d 727 (4th Cir. 1968). The record clearly indicates that Russo failed to supply his accountants with all necessary information. We now turn to the issue whether the failure of Anthony Russo, Inc. to file its Federal corporate income tax returns for the taxable years 1965 through 1969 was fraudulent with the intent to defeat its tax liability. It is well-settled that the addition to tax for fraud may be imposed where there has been a willful attempt to evade tax by means of a willful failure to file returns, as well as by means of filing intentionally false returns. Albert Gemma,46 T.C. 821 (1966). Although the proven failure of a taxpayer to file returns for an extended period of time is not enough, in and of itself, to justify the imposition of the fraud penalty, it is persuasive evidence of an intent to defraud the government. Stoltzfus v. United States,398 F.2d 1002 (3d Cir. 1968), *117 affg. 264 F.Supp. 824 (E.D. Pa. 1967); Cirillo v. Commissioner,314 F.2d 478 (3d Cir. 1963), affg. in part and revg. in part a Memorandum Opinion of this Court; Anson Beaver,55 T.C. 85 (1970). There is a division of opinion among the Courts of Appeals as to what the respondent must show, in addition to willful failure to file, in order to prove the requisite fraudulent intent. The Third Circuit, the Court of Appeals to which an appeal of our decision herein would lie, has adopted the so-called "affirmative indication test" which requires an affirmative indication of intent to evade tax. In Cirillo v. Commissioner,supra, the Third Circuit stated: To justify a fraud penalty the circumstances surrounding the failure to file returns must strongly and unequivocally indicate an intention to avoid the payment of taxes. [314 F.2d at 482.] This Court has expressed approval of the approach followed in Powell v. Granquist,252 F.2d 56 (9th Cir. 1958), affg. 146 F.Supp. 308 (D. Ore. 1956). Anson Beaver,supra. The Ninth Circuit simply considered the taxpayer's *118 failure to file along with other relevant facts in determining whether there was fraudulent intent to evade tax. In any case, we are bound in this instance to abide by the views of the Third Circuit by our decision in Jack E. Golsen,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971). A corporation can act only through its officers, employees and agents, and their intentions may be imputed to the corporation. A corporation does not escape responsibility for the acts of its duly authorized officers who have performed wrongfully in that capacity. Corporate fraud necessarily depends upon the fraudulent intent of the corporate officers. American Lithofold Corp.,55 T.C. 904 (1971); Irving S. Federbush,34 T.C. 740 (1960); Ace Tool and Engineering, Inc.,22 T.C. 833 (1954). After analyzing all of the evidence in this case, bearing in mind the above-stated principles, we conclude that respondent failed to establish fraud by the corporation by clear and convincing evidence. The corporation sustained operating losses for the years 1966 and 1968. The amount *119 of taxable income for the year 1969 was insignificant. Thus, the failure to file the corporate returns for the years in issue does not establish a pattern of failing to report substantial amounts of taxable income. A strong suspicion of fraudulent intent might arise from the record. However, the issue must not be decided on the basis of suspicion. Fraud is never presumed. Negligence, careless indifference, or disregard of rules and regulations, as was present in the instant case, do not suffice to establish fraud. E. S. Iley,19 T.C. 631 (1952). The evidence is simply not adequate to support respondent's burden of proving intent to defraud by clear and convincing evidence. Decisions will be entered under Rule 155.
Footnotes
1. The cases of the following petitioners are consolidated herewith: Anthony Russo, docket No. 5216-72; and Anthony Russo, Inc., docket No. 5222-72.↩
2. Respondent stipulated that there is no deficiency in income tax and no addition to tax due from or over-payment due to Anthony and Rose Russo for the taxable year 1964. And, respondent concedes that Rose Russo should not be held liable for addition to tax for fraud for the taxable years 1965 and 1966. ↩
3. All statutory references are to the Internal Revenue Code of 1954 in effect during the taxable years in issue, unless otherwise noted.↩