ALTON G. DUNN, JR. AND NANCY C. DUNN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dunn v. Commissioner
Docket No. 4463-76.
United States Tax Court
T.C. Memo 1978-204; 1978 Tax Ct. Memo LEXIS 309; 37 T.C.M. (CCH) 866; T.C.M. (RIA) 780204; June 5, 1978, Filed *309 Petitioner Alton, an attorney, was also a partner of his father in an insurance agency. In 1962 petitioner discovered that his father was erroneously computing the partnership income. After trying unsuccessfully to get his father to correctly report the partnership income petitioner decided not to file a return for 1962 rather than file a knowingly incorrect return. Petitioner hoped that his failure to file would prompt an audit of his tax liability for 1962 and thus lead to a forced correction of his father's computations of the partnership income. When no audit of his tax liability was forthcoming, petitioner continued not filing returns for the years 1963-71 when his tax liability was finally investigated by the revenue service. Petitioner then paid the back taxes with interest and respondent issued a notice of deficiency to petitioner and his wife determining an addition to tax for fraud. Held, respondent failed to prove that petitioner's failure to file returns was with the intent to evade tax for the years 1962-66. Held, further, petitioner's failure to file returns for the years 1967-71 was with intent to evade tax and the addition to tax for fraud under section 6653(b), I.R.C. 1954, *310 is imposed on Alton for those years. Held, further,Alton is liable for the additions to tax for negligence, sec. 6653(a), and for failure to file, sec. 6651(a), for the years 1962-66 by concession. Held, further, petitioner Nancy is not liable for the additions to tax for negligence, sec. 6653(a), and for failure to file, sec. 6651(a), for the years 1968-71, asserted by respondent in his answer. Alton G. Dunn, Jr., and Nancy C. Dunn, pro se. Joan B. Alexander, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: In the notice of deficiency respondent determined that petitioners owed additions to tax for fraud pursuant to section 6653(b), I.R.C. 1954, [1] as a result of failure to file income tax returns as follows: Taxable
Addition to tax under year
sec. 6653(b)
1962
$ 352.63
1963
368.39
1964
501.03
1965
471.27
1966
652.17
1967
1,285.09
1968
1,255.95
1969
2,512.40
1970
1,507.91
1971
1,030.00
$9,936.84
Respondent now concedes that petitioner Nancy C. Dunn is not liable for the above additions to tax for any of the taxable years at issue. *311 By way of his answer respondent alleged in the alternative that petitioner Alton G. Dunn, Jr., failed to file tax returns for the taxable years 1962 through 1971 and prayed that additions to tax for failure to file a return pursuant to section 6651(a)(1) and for negligent or intentional disregard of applicable rules and regulations pursuant to section 6653(a) be imposed for these taxable years in the event the additions to tax for fraud are not upheld. Petitioner Alton C. Dunn concedes in his opening brief that imposition of these additions to tax is justified. The additions to tax pursuant to sections 6651(a)(1) and 6653(a) are sought against petitioner Nancy C. Dunn in respondent's answer only for the taxable years 1968 through 1971. The additions to tax have been determined by respondent in his brief as follows: Year
Sec. 6651(a)(1)
Sec. 6653(a)
1962
$ 143.32
$ 35.26
1963
184.20
36.84
1964
250.52
50.10
1965
235.63
47.13
1966
220.05
65.22
1967
501.84
128.51
1968
379.40
125.59
1969
972.15
251.24
1970
621.91
150.79
1971
385.90
103.00
$3,894.92
$993.68
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The petitioners, Alton G. Dunn, Jr., and Nancy C. Dunn (hereinafter referred to as Alton *312 and Nancy), are husband and wife who, at the time they filed the petition, resided in Cooperstown, N. Y. The petitioners did not file individual income tax returns (Form 1040) for the taxable years 1962 through 1971. After audit by agents of the respondent their taxable income was determined and they paid the taxes and interest due for all years, as well as the addition to tax for failure to pay estimated tax. [2] *313 Alton filed individual income tax returns for 1961 and prior years. During the taxable years at issue Alton and his father were partners in the insurance firm of Dunn and Dunn, located in Cooperstown, N.Y. It is stipulated that Alton received taxable income as his distributive share of net profit from the partnership, as follows: Taxable
partnership Year
income
1962
$ 6,036.53
1963
6,125.04
1964
5,881.52
1965
5,848.41
1966
6,782.33
1967
6,109.48
1968
8,541.47
1969
15,673.77
1970
15,277.38
1971
7,357.60
For 1962 through 1969 Alton's father prepared and filed partnership information returns (Form 1065) for Dunn and Dunn which misstated commissions earned from various insurance companies, as follows: Corrected gross
partnership Year
commissions
1962
Approximately $18,000
1963
Approximately $18,000
1964
Approximately $18,000
1965
Approximately $19,000
1966
$21,532.85
1967
21,371.21
1968
26,760.82
1969
42,384.00
*314 For 1970 and 1971, no partnership information returns were filed, but insurance commissions earned from the various insurance companies totaled $42,926.91 and $40,499.20, respectively. [3] During the taxable years at issue Alton's father prepared and filed individual income tax returns which, although they purported to reflect his share of the income from the Dunn and Dunn partnership, did not do so. Alton was aware during the taxable years at issue that the partnership information returns and the individual income tax returns, prepared and filed by petitioner's father, were incorrect. Alton also was a practicing attorney in New York State during the taxable years at issue. As part of his law practice, he was an executor for some estates and prepared individual income tax returns for some of his clients. His gross income from his law practice was as follows: Gross income
from Year
law practice
1962
$ 300.00
1963
300.00
1964
150.00
1965
150.00
1966
298.00
1967
9,539.52
1968
351.00
1969
2,842.10
1970
142.00
1971
839.48
Alton *315 was town supervisor of Otsego, N.Y., from 1964 through 1969. He received a salary from which income taxes were withheld, and he received Forms W-2 from the town with respect to those years as follows: Year
Gross income
Tax withheld
1964
$3,620
1965
3,620
1966
4,100
$399.60
1967
4,100
532.80
1968
4,500
597.60
1969
4,500
597.62 During 1966 through 1971, Alton received interest income. The interest income was nominal in 1966 through 1969. In 1970 the interest income exceeded $400 and in 1971 it exceeded $1,000. Alton was aware during the taxable years at issue that he was required to file individual income tax returns on his own behalf. During all of the years at issue, petitioner maintained a record of his cash drawings from the partnership and a record of his income and expenses from his law practice. Alton, as stated, was aware that the partnership information returns prepared by his father and his father's individual income tax returns were inaccurate. He had attempted without success to persuade his father to correctly report the partnership income. Alton was active in the insurance partnership and had access to the partnership books and records during the taxable years at issue. He also knew *316 that he could obtain the correct commission income from the insurance companies. However, he made no effort during the years at issue to ascertain the correct amount of partnership income. In 1962 Alton made one estimated tax payment. He also filed a request with the Internal Revenue Service for an extension of time in which to file the Dunns' individual income tax return. The request was denied after the due date of the return and Alton decided not to file a return for 1962. Alton felt a strong loyalty toward his father. He did not want to knowingly file a fraudulent return but he was loath to affirmatively inform the Internal Revenue Service of his father's erroneous computations of the partnership income. Alton believed that his failure to file a return after he had paid an estimated tax installment and been denied an extension of time to file would provoke an audit by the Internal Revenue Service of the partnership returns within a year or two. At that time his father's incorrect reporting of commission income would be corrected and Alton would pay the tax due plus interest and appropriate additions to tax. From 1964 through 1969 Alton, as Chief Fiscal Officer of the Town *317 of Otsego sent Forms W-2 from the town of Otsego to the Internal Revenue Service reporting the salary paid to him by the town. He understated on these forms the number of personal exemptions he was entitled to claim so that more tax would be withheld. However, he did not request extensions of time to file his returns for 1963 through 1971 nor did he make any estimated tax payments during those years. As the years passed without an audit being initiated Alton realized that the possible additions to tax that could be imposed on him for his failure to file returns were becoming serious and that he might not be financially able to pay back taxes, interest, and additions to tax. He was also aware that the failure to file returns could be a criminal violation (a misdemeanor, sec. 7203.) In mid-1969, Revenue Agent Kanazawich was assigned to audit Alton's books and records for the taxable years 1967 and 1968.By letter Kanazawich suggested an appointment with Alton for October 1, 1969. Alton and Kanazawich did not meet on that date and Kanazawich's efforts to locate Alton at his home or at the Dunn and Dunn agency were unsuccessful. Alton explained the next day that he had been unable *318 to meet with Kanazawich because his attendance had been required at a town supervisor's meeting in Cooperstown. Another meeting was scheduled for October 21, 1969, and Alton again failed to appear without informing Kanazawich in advance. Five or six further appointments for meetings were made and not kept by Alton. Kanazawich made seven or eight unannounced visits to Alton's residence and office in an effort to meet with him but was unable to get in touch with him. Kanazawich and Alton made an appointment to meet on May 14, 1970, which Alton was unable to attend because he was involved in an automobile accident that day and was seriously injured. While Alton was recuperating Kanazawich audited the partnership returns of the Dunn and Dunn agency and met with Alton's father on May 21, 1971. On June 9, 1971, Alton and Kanazawich met and Alton informed him that he had not filed income tax returns since 1961. He gave Kanazawich records of his earnings from his law practice, his drawings from the partnership, his wages, and those of his wife. On July 31, 1973, Alton was named in a 4-count information for his willful failure to file his individual income tax returns for 1967 through *319 1970, in violation of section 7203. On April 8, 1974, petitioner pled guilty to count III of the information, which count referred to 1969, and the remaining counts were later dismissed. Nancy was employed in 1966 and 1967 by the Farmer's Museum, Cooperstown, N.Y., and in 1968 through 1971 by the village of Cooperstown. From both of these jobs, she received gross income from which taxes were withheld and she received Forms W-2 at the appropriate times, as follows: Income taxes Year
Wages
withheld
1966
$ 239.42
$ 24.52
1967
269.60
30.03
1968
2,770.77
396.70
1969
3,645.88
538.60
1970
3,946.70
528.20
1971
4,283.62
516.40
When she received her Forms W-2 Nancy turned them over to Alton because Alton had assumed the responsibility for filing their tax returns. Nancy could not recall signing any returns for the taxable years at issue. FINDINGS OF ULTIMATE FACTS No part of the underpayment of taxes due from petitioners for the years 1962-66 was due to fraud. The underpayment of taxes due from petitioners for the years 1967-71 was due to fraud on the part of Alton Dunn, Jr.
The underpayment of taxes due from petitioners for the years 1962-66 was due to negligence or intentional disregard of rules and regulations *320 on the part of Alton Dunn, Jr. No part of the underpayment was due to negligence or intentional disregard of rules and regulations on the part of Nancy Dunn. Alton Dunn's failure to file returns for the years 1962-66 was not due to reasonable cause but was due to willful neglect on the part of Alton Dunn, Jr. Respondent has failed to carry his burden of proving that Nancy Dunn's failure to file returns for the years 1968-71 was not due to reasonable cause or due to willful neglect. OPINION Whether Alton's failure to file income tax returns for the taxable years 1962 through 1971 was due to fraud is the primary issue confronting us. Before we can find that Alton's failure to file returns constitutes fraud as that term is used in section 6653(b), [4] we must determine that Alton's conduct was intentional and motivated by a specific purpose to evade a tax believed to be owing. Powell v. Granquist,252 F.2d 56 (9th Cir. 1958); Durovic v. Commissioner,54 T.C. 1364, 1398 (1970), revd. and remanded on other grounds, 487 F.2d 36 (7th Cir. 1973); Gajewski v. Commissioner,67 T.C. 181 (1976).The existence of fraud is a question of fact which respondent must prove by clear and convincing evidence. *321 Irolla v. United States,390 F.2d 951, 953 (Ct. Cl. 1968). As explained in Cirillo v. Commissioner,314 F.2d 478, 482 (3d Cir. 1963): To justify a fraud penalty the circumstances surrounding the failure to file returns must strongly and unequivocally indicate an intention to avoid the payment of taxes.[Cits. omitted.] * * * [The] Commissioner's heavy burden of proof * * * cannot be satisfied by mere disbelief of taxpayer's testimony. The record must contain some convincing affirmative indication of the required specific intent. In his opening brief Alton argues that respondent's burden of proof may be sustained only by proving affirmative indications of fraudulent intent and "affirmative action." Affirmative action is a criminal fraud requirement consisting of actively deceptive conduct by the taxpayer. See Spies v. United States,317 U.S. 492, 498-499 (1943). In First Trust & Savings Bank v. United States,206 F.2d 97, 101 (8th Cir. 1953), the Eighth Circuit adopted *322 for civil fraud cases the affirmative action test of Spies. The Third Circuit in The Third Circuit in Cirillo v. Commissioner,supra, and the Ninth Circuit in Powell v. Granquist,supra, require only affirmative indications of fraudulent intent and not affirmative action. See also Stoltzfus v. United States,264 F. Supp. 824, 827 (D.C. Pa. 1967), affd. 398 F.2d 1002 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969). This Court generally follows the approach used by the Ninth and Third Circuits and does not require a showing commensurate with criminal fraud. See Gajewski v. Commissioner,supra at 200, fn. 24. Convincing affirmative indication of the required specific intent is sufficient to carry respondent's burden of proof. This burden may be met by circumstantial evidence. Stoltzfus v. United States,supra."The critical question is whether the circumstances attending a particular failure to file warrant an inference of intention to evade taxes." Cirillo v. Commissioner,supra at 482. With this background we turn to an examination of the facts and circumstances surrounding Alton's failure to file income tax returns for the 10 consecutive taxable years at issue. Alton, who had *323 filed income tax returns for years previous to 1962 and was aware of his statutory obligations, was faced in 1962 with a painful dilemma regarding the taxable year 1962. He became aware that his father and partner had been fraudulently preparing the Dunn and Dunn agency partnership information returns and was doing so for the taxable year 1962. His efforts to rectify his father's practice by persuasion proved unavailing. As a consequence, he believed he had three options available to him: File an individual return for 1962 including the inaccurate figures from the partnership return; compute the correct amount of insurance commission income for the Dunn and Dunn agency and file an individual return using those figures; or file no return at all. Alton did not want to proceed in a manner which would result in him af rmatively bringing his father to account. He also did not want to file a return he knew to be based on fraudulently computed amounts. He believed that his failure to file a return for 1962 after he had requested and been denied an extension of time to file and had made an estimated tax payment would arouse, in a year or so, the suspicions of the Internal Revenue Service *324 and provoke an audit which would correct the misstated insurance commissions and terminate his father's fraudulent computation method. Alton kept records of his cash withdrawals from the partnership and his income from his law practice and intended to pay the tax plus interest and additions to tax at that time. Although, as Alton admits, the strategy he adopted in order to halt his father's conduct was misguided and convoluted we accept his testimony that it was originally conceived out of loyalty to his father. Alton, it is true, could have acquired the partnership records or the records of the insurance companies and at least made a stab at preparing an accurate individual return for 1962. That he made no effort to do so was not to evade payment of income tax but to avoid directly precipitating an investigation of his father's accounting method.His intent in failing to file a return for the taxable year 1962 was, as he testified, to provoke an audit of the partnership by way of an audit of his own return. In that initial year, at least, we do not discern the intent necessary to sustain imposition of an addition to tax pursuant to section 6653(b). For the years subsequent to *325 1962, however, we must examine Alton's testimony with respect to why he failed to file returns more carefully. Despite the fact that he took no further steps to affirmatively provoke an audit of his own and thus the partnership returns, he testified that he understood that it might take several years for the Internal Revenue Service to get around to inquiring about his failure to file a 1962 return and he was still very much concerned about taking any direct affirmative steps to implicate his father.He kept records of his own income and his draw from the partnership so he could compute his correct tax liability and pay the tax when his share of the partnership income was correctly determined. We have no evidence that would affirmatively indicate an intention on the part of Alton to evade the payment of the taxes that he knew he owed. Rather, through a remarkable display of either excessive loyalty or excessive subservience, Alton simply remained unwilling to insist on a halt to what was rapidly becoming a serious situation.
But as the years went by and there was less likelihood that there would be an audit of his 1962 income, a different picture emerges. In 1967 Alton realized a *326 sizable income from his law practice and he must have also recognized that the partnership income was increasing. He was receiving an increasing salary from the town of Otsego and Nancy was beginning to earn a taxable salary from the village of Cooperstown which she expected him to report. Alton became concerned about the consequences to himself resulting from his repeated nonfiling. The possibility of criminal prosecution and the problems of financial ability to pay back taxes, interest and additions to tax become increasingly apparent. In light of this situation we believe Alton would have taken more direct steps to either determine the correct partnership income or have its returns audited, if his only concern was with "blowing the whistle" on his father. The fact that he took no such steps at that time, and his testimony that he did not intend to contact the revenue service, strongly suggests that he was more concerned with his own tax liabilities rather than his father's defalcations and that since so much time had passed since he last filed a return that his best course of conduct to not only avoid payment of the back taxes, interest, and additions to tax but to avoid payment *327 of taxes on his current income was to continue not filing returns. The inference that Alton's continued failures to file were a result of his desire to protect himself is certainly present and such an inference is certainly an indication of fraudulent intent. See Stoltzfus v. United States,supra at 828, Acker v. Commissioner,26 T.C. 107 (1956). Furthermore, Alton's conduct subsequent to 1967 supports the inference that Alton was trying to evade paying the taxes, both past and present, that he knew to be due. In 1969, the Internal Revenue Service began to audit Alton's books and records for the taxable years 1967 and 1968. Alton repeatedly failed to attend meetings scheduled with Agent Kanazawich. Failure to cooperate with agents of the Internal Revenue Service is also evidence from which the requisite intent may be inferred. Powell v. Granquist,supra at 61. And he did not file returns for 1969, 1970, and 1971 even though he knew that he was under investigation; nor did he file delinquent returns for the prior years. Since Dunn and Dunn agency did not file partnership information returns for the taxable years 1970 and 1971, Alton's aversion to filing a fraudulent return for *328 these years was no longer a valid excuse, even to himself. Although Alton was presented with the opportunity for which he had been hoping, he did not take advantage of it until June 1971. By then his wife had been informed by Kanazawich that he had been trying to meet with Alton and the partnership itself had been audited. Admittedly, during some part of 1970 and possibly 1971 Alton was recuperating from injuries received in an automobile accident. However, the accident did not occur until after Kanazawich had made six or seven definite appointments to meet with Alton. Alton's explanations for the broken appointments are disingenuous. He states that he did not meet with Kanazawich because he was unable to obtain from his father the partnership records necessary to correctly compute the partnership income. Therefore, he was unable to determine his tax liabilities. Inasmuch as Alton had never attempted to compute the partnership income and excused himself at trial by stating that he did not know if its books and records were accurately kept by his father, this explanation is feeble and inconsistent. Moreover, Alton could have obtained or provided the partnership records for Kanazawich *329 in order to begin computing Alton's tax liabilities whether it angered his father or not. Alton would have us believe that he could acquire control of the partnership records only upon his father's acquiescence, retirement, or death. However, Alton was active in the insurance business and had access to the partnership books and records. Control of them was hardly a prerequisite to computing his tax liabilities, and he admitted at trial that he could have obtained the correct records from the insurance companies but made no effort to do so. Furthermore, Alton was not required to have ascertained his tax liabilities before he could meet with Kanazawich. His further explanation that he intentionally delayed meeting with Kanazawich with regard to his nonfilings until the partnership itself was under investigation by the Internal Revenue Service is inconsistent with his original motivation for not filing his tax returns. Alton initially failed to file in order to provoke an audit of his returns and through him of the partnership's books and records. By neglecting to meet with Kanazawich or at least inform him of his prior failures to file returns, he was postponing what he had hoped *330 to obtain. By 1967 Alton was not so loath to incriminate his father as he was to blow the whistle on himself. His awareness of his possible criminal liability, his concern that he might not be able to pay what he owed the Government, the failure to report his earnings from the law practice, and his footdragging with Kanazawich are cumulative and affirmative indications of his specific intent to evade his taxes when he did not file returns in 1967, 1968, 1969, 1970, and 1971. See Cirillo v. Commissioner,supra.
Consequently we uphold imposition of the appropriate addition to tax under section 6653(b) for the taxable years 1967, 1968, 1969, 1970, and 1971 against Alton. However, we cannot find that respondent has proved by the requisite clear and convincing evidence that Alton intended to evade payment of his taxes due for the years 1962-66, so we decline to impose the addition to tax under section 6653(b) for those years. In his answer respondent contended alternatively that, should we fail to find fraud for any taxable year on the part of petitioners, the additions to tax provided in section 6651(a)[5] for failure to file returns and provided in section 6653(a)[6] for negligence *331 or intentional disregard of rules and regulations should be asserted against petitioners. In his brief respondent conceded that Nancy is not liable for the additions to tax for fraud for any of the years at issue but is liable for the additions to tax for failure to file and for negligence for the years 1968-71 only. Having raised the issues of the alternative *332 penalties by answer respondent has the burden of proof on these issues. See Rule 142, Rules of Practice and Procedure, United States Tax Court; Sanderling, Inc. v. Commissioner,66 T.C. 743, 757 (1976); Pickett v. Commissioner,T.C. Memo. 1975-33. However, on brief "Petitioner concedes his liability for the penalties prescribed by Int. Rev. Code of 1954 §§ 6651(a) and 6653(a)." Since the additions to tax for fraud under section 6653(b) and the additions to tax under sections 6651(a) and 6653(a) are mutually exclusive, see sec. 6653(a) and (d) and sec. 301.6653-1(b)(2), Proc. and Admin. Regs., and we have found fraud on the part of Alton for the years 1967-71, neither the failure to file penalty or the negligence penalty can be asserted against Alton for those years. However, Alton has conceded the applicability of the failure to file and negligence penalties for the years 1962-66 so he is liable for those penalties for those years. With respect to Nancy's liability for the failure to file and negligence penalties, we interpret the concession with respect to these penalties in petitioners' brief as being in behalf of Alton only, not Nancy.Furthermore, respondent states on brief that *333 the only issue with respect to Nancy is her liability for the failure to file and negligence penalties for the years 1968-71. With regard to the years 1968-71 we have found Alton liable for the fraud penalty as determined in the notice of deficiency, which we believe was computed on the combined income of both Alton and Nancy. See fn. 2. That being the case, Nancy's part of the unreported income cannot be subjected to the failure to file and negligence penalties, because it is already subjected to the fraud penalty. The regulation cited above prohibits the assessment of double penalties "with respect to the same underpayment." However if, because of the computations, the imposition of the fraud penalty against Alton for the years 1968-71 does not, per se, preclude the imposition of the negligence and failure to file penalties against Nancy we have found that respondent has failed to carry his burden of proving that any part of the underpayment was due to negligence or intentional disregard of rules and regulations on the part of Nancy, or that her failure to file returns was not due to reasonable cause or due to willful neglect. The only evidence we have with regard to Nancy's participation *334 in these matters indicates that she simply turned over her copies of her W-2 forms to Alton and relied on him to report the income. Also it may be that the amounts of tax withheld and paid to the Government on Nancy's income would cover the tax due on her income alone. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue, unless otherwise specified.↩
2. We have not been advised how taxable income was determined, whether delinquent returns were filed, or how the tax was computed. In paragraph 7(m) of his answer, respondent alleged that the taxable income received by petitioners during the years at issue and the total tax due thereon are shown on Exh. A attached. Exh. A is a schedule showing the amounts received as salaries by both Alton and Nancy and the income and/or losses of Alton from the partnership and his law practice for each of the years in issue. The figures in each category are totaled for each year and the bottom line reflects "Tax Due." In their reply petitioners do not deny the allegations of respondent's paragraph 7(m), in fact they appear to deliberately skip over it. However, we are unable to reconcile the total income figures on the exhibit with the taxable income figures in the notice of deficiency, although the "Tax Due" figures do conform. From the evidence we have we must assume that the tax was computed by combining the incomes of both Alton and Nancy and applying joint return rates. The notice of deficiency was mailed to Alton and Nancy jointly.↩
3. This paragraph is as stipulated. It is not apparent from the record how the insurance commissions were misstated. Alton refers to his father's practice of "taking cash advances and adding expenses" to arrive at gross premiums.↩
4. Sec. 6653(b) provides in part: * * * If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment.↩
5. Sec. 6651(a)(1) provides in part: (1) [In case of failure] to file any return required under authority of subchapter A of Chapter 61 * * * on the date prescribed therefor * * * unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate. ↩
6. Sec. 6653(a) provides in part: If any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩